Jerry W. MITCHELL, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2954.

Court of Appeals of Alaska.

Sept. 27, 1991.

Susan Orlansky, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

OPINION

COATS, Judge.

Jerry W. Mitchell was convicted, following a jury trial, of four counts of sexual abuse of a minor in the first degree, three counts of sexual abuse of a minor in the second degree, and one count of attempted sexual abuse of a minor in the first degree. Mitchell was convicted of committing various acts of sexual abuse on two minors: D.J., his six-year-old stepson, and E.J., his eight-year-old stepdaughter. The state tried Mitchell for these acts in two separate trials. At the first trial, which was held in March 1988, the jury found Mitchell guilty of one count of attempted sexual abuse of a minor in the first degree, and two counts of sexual abuse of a minor in the second degree. The jury acquitted Mitchell on several counts and was unable to reach a verdict on several counts. In October of 1988, the state retried Mitchell on the charges on which the first jury failed to return verdicts. This second jury convicted Mitchell for four counts of sexual abuse of a minor in the first degree, and one count of sexual abuse of a minor in the second degree.

■ During both trials, the complaining witnesses testified in closed courtrooms. In the first trial the defense attorney sought closure. However, in the second trial the state moved for closure, and the trial judge granted closure over the de-

fense attorney's objection. Mitchell now argues that the closure order violated his right to a public trial. He claims that the closure, which was allowed pursuant to former AS 12.45.048, was unconstitutional because the judge did not make a constitutionally required finding of necessity, or consider alternatives to complete closure prior to allowing exclusion during the children's testimony.

In *Renkel v. State*, 807 P.2d 1087 (Alaska App.1991), we addressed the constitutionality of closing the courtroom during the testimony of children pursuant to AS 12.45.048. In that case, the state agreed that AS 12.45.048 was unconstitutional. *Id.* at 1092. We reversed Renkel's conviction, finding that the trial court's closure of the courtroom denied Renkel his right to a public trial under the United States and Alaska Constitutions. U.S. Const. amends. VI and XIV; Alaska Const. art. 1, § 11. We noted that a trial court must make particularized findings to support a closure order. *See Renkel* at 1093. We find the circumstances of Mitchell's second trial to be indistinguishable. In Mitchell's second trial, it seems clear from the record that the trial judge granted the state's request to close the courtroom. Nothing in the record suggests that the courtroom was not closed pursuant to the judge's order. Furthermore, the record does not include specific findings which justify the trial judge's decision to close the courtroom. *See Renkel* at 1091–94. We accordingly reverse the convictions which resulted from Mitchell's second trial.

■ Mitchell next argues that the state presented insufficient evidence for the jury in the first trial to find him guilty of attempted sexual abuse of a minor in the first degree as charged in Count VIII of the indictment. The evidence supporting this count is as follows.

E.J., Mitchell's eight-year-old stepdaughter, testified that on October 9, 1987, she and Mitchell were in the bathroom of her mother's trailer. Mitchell had brought a bottle of syrup into the bathroom and said

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

he was going to pour the syrup on his penis, and that he wanted E.J. to lick it off. E.J. told Mitchell that she did not want to do this, and Mitchell never actually put the syrup on his penis. E.J.'s mother later testified that she found a bottle of syrup in the bathroom and asked Mitchell why it was there. Mitchell told E.J.'s mother that he was going to make sandwiches with it. Later, however, E.J.'s mother found a wet drop of syrup on the counter. This made her suspicious, and she then asked E.J. if Mitchell had touched her or made her "feel icky." E.J. responded that he had.

Alaska Statute 11.31.100(a) states the elements of attempt:

> A person is guilty of an attempt to commit a crime if, with intent to commit a crime, the person engages in conduct which constitutes a substantial step toward the commission of that crime.

In *Sullivan v. State*, 766 P.2d 51, 53 (Alaska App.1988) (citations omitted), we summarized the law of attempt as follows:

> In order to constitute a "substantial step," conduct must go beyond mere preparation. Whether an act is merely preparatory or is "sufficiently close to the consummation of the crime to amount to attempt, is a question of degree and depends upon the facts and circumstances of a particular case."

Mitchell argues that *Sullivan* supports his position that there was insufficient evidence to convict him of attempted sexual abuse of a minor in the first degree.

In *Sullivan*, the defendant asked an eight-year-old girl if she would be his girlfriend, and offered to pay her money. The girl responded "no." Next Sullivan sent the girl a note which asked her to be his girlfriend, to kiss him, to take off her clothes, and to get him another girlfriend. The note included a spaces for both "yes" and "no" answers. *Id.* at 52. In analyzing the case, we distinguished the facts in *Sullivan* from those in *Braham v. State*, 571 P.2d 631 (Alaska 1977), *cert. denied*, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 410 (1978).

In *Braham*, the defendant solicited a friend to kill a third person for $600. Braham instructed the friend, Koelzer, to visit the intended victim, Peterson, in the hospital, and deliver Peterson a message. Shortly after Koelzer delivered the message, he abandoned the murder plan. The Alaska Supreme Court concluded that Braham's purpose in having Koelzer visit Peterson in the hospital was to have Koelzer establish a relationship of trust and confidence with Peterson in order to facilitate the commission of the murder. The court found that this was a "direct and unequivocal" act toward the commission of the murder and therefore the evidence was sufficient to sustain a conviction for attempted murder. *Id.* at 638.

We explained in *Sullivan* that Braham's conduct was distinguishable from Sullivan's conduct in two respects: Sullivan did not make an agreement between himself and another person to commit a crime; and Sullivan did not engage in any activity toward completion of his crime after he solicited the child with the notes. *Sullivan*, 766 P.2d at 54. Although Sullivan had a plan to seduce the young girl, he took no substantial step toward the actual commission of the crime. *Id.* On this basis, we reversed Sullivan's conclusion for attempted sexual abuse of a minor.

In Mitchell's case, he brought both E.J. and the syrup into the bathroom, and asked E.J. if she would lick the syrup from his penis. The fact that a wet drop of syrup was found on the counter supports the conclusion that Mitchell actually opened the syrup and poured some amount of it. We hold that a reasonable jury could conclude that these actions by Mitchell constituted a substantial step toward the commission of sexual abuse of a minor in the first degree. The jury could find that Mitchell had maneuvered his intended victim into a place where he could commit the crime, had brought the syrup into the bathroom in order to commit the crime, and had actually done something with the syrup which caused the syrup to spill. We conclude that there was sufficient evidence for a jury to find Mitchell guilty of attempted sexual abuse of a minor in the first degree based upon this evidence.

Mitchell next argues that the descriptions of sexual abuse by D.J. and E.J. were not clear, and failed to demonstrate that the various acts described occurred in separate incidents and warranted multiple convictions. In his reply brief, Mitchell concedes that his convictions are supportable under *Yearty v. State*, 805 P.2d 987, 993 (Alaska App.1991), which was decided after Mitchell filed his opening brief. We have reviewed Mitchell's convictions, and conclude that separate convictions were proper.

The convictions are AFFIRMED in part, REVERSED in part.

MANNHEIMER, J., not participating.